[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 34 year old plaintiff wife and the 35 year old defendant husband intermarried on March 22, 1975 at Waterbury, Connecticut. The plaintiff has resided continuously in this state for more than one year prior to bringing this action which seeks to dissolve the marriage on three grounds: irretrievable breakdown, adultery, and mental cruelty. The defendant has filed a cross complaint alleging intolerable cruelty, and his answer admits that the marriage has broken down irretrievably. The parties have two minor children issue of the marriage, and they have stipulated to the terms of custody and visitation in an agreement dated January 29, 1991 and filed with the court on that day. The court accepted the arrangement and its terms will be set out infra.
The plaintiff, a high school graduate, has been employed by Duracell U.S.A. as a computer operator for the last seven years. Her job title is production scheduler.
Prior to her present job, the plaintiff worked at FBC from 1979 and was employed on the night shift for about two years. The plaintiff's current average gross weekly wage is $699.15 and $395.62 after all deductions including $41.94 for 401K Plan and $75 for credit union. After adding back these two voluntary deductions, the plaintiff's net weekly income is $512.56.
The defendant, who left high school during his sophomore year, has been employed by the Town of Middlebury since 1986, first as a truck mechanic and he now holds the position of Chief Mechanic. From 1982 until 1988, the defendant was also self-employed as a truck mechanic, and he continued to "moon CT Page 2775 light" in 1989 and 1990. Prior to his town employment, he also worked for Stack Oil Services as a mechanic. Currently his wages are $564.80 gross and after FICA and withholding, his net weekly net wages are $418.35. He also earns overtime from time to time but his itemized earnings reflected no overtime after the week ended September 1, 1990, (Plaintiff's Exhibit B). For 1990 his average gross was $600.
The plaintiff brought a car into the marriage and no debts. The plaintiff's mother loaned the parties $4,000 to enable them to purchase their home which was built by defendant's father located at 421 Park Road, Watertown, for $18,000 — mortgaging the premises for $14,600. There remains due on the first mortgage a balance of $10,387. The plaintiff's mother has been repaid. A two bay garage, large enough to accommodate trucks and containing a workshop and an office was built on the premises in 1988, (Plaintiff's Exhibit Y) financed by a second mortgage in the original amount of $21,448, now reduced to $13,623. Both parties estimate the fair market value of the premises to be $150,000. The court accepts the valuation.
The garage was built to serve two purposes. The defendant was able to work on various vehicles in his spare time. He also was better able to pursue his hobby of racing a modified 1986 Chevy Cavalier at Stafford Springs Motor Speedway and other tracks, (Plaintiff's Exhibits C, E, F, BB).
The racing car's chassis was purchased by Anthony Sanzo for $1,500, (Plaintiff's Exhibit D) and this remains the extent of Mr. Sanzo's interest in the car. In his opinion the car is presently worth $13,000 to $15,000 including the motor which he valued at $9,000 to $10,000. The court concludes that the defendant's efforts and his expenses incurred to keep this vehicle "race ready" were with the approval or at least the acquiescence of the plaintiff for she advanced $5,000 to $6,000 to defendant for the stock car in 1990, including $4,000 she advanced to defendant for a new motor. The plaintiff claims $3,000 is owed to her from defendant. The court finds the racing car to be worth $14,000, that Mr. Sanzo's interest to be worth $1,500 and defendant's interest in it to be worth $12,500.
During their years together the parties divided the household bills. The plaintiff purchased the groceries and paid for the auto insurance, utilities, heat and homeowner insurance. The defendant paid the mortgages, taxes, cable t.v. and the various charge cards. The parties lived within their means. The plaintiff and defendant each testified that their incomes were about equal and they each paid about the same on the bills and there was money left. CT Page 2776
The plaintiff owns a parcel of real estate located in Wilmington, Vermont which she received from her father as a gift. It is valued at $40,000 on plaintiff's affidavit and free of mortgage and is uninhabitable, (Plaintiff's Exhibits DD and EE).
The plaintiff has a vested pension at Duracell in a 401K Plan that had a value of $19,077.60 as of September 30, 1990, (Defendant's Exhibit #1).
The defendant received a settlement in 1985 of a worker's compensation claim that was deposited in a C.D. until July or August, 1990, when the defendant withdrew the balance of about $13,500. He testified that he spent the money on his truck, his Harley motorcycle and otherwise, without having an accurate accounting for the money.
The parties separated for one week in 1979. Each confessed to an extra marital affair. The parties reconciled. The defendant also stopped consuming alcoholic beverages which abstinence lasted ten years.
The plaintiff testified to various suspicions she had of defendant's attention toward other women during the marriage but no other evidence was presented to support plaintiff's suspicions.
The final breakdown of the marriage occurred after the defendant invited Mark Bonacore to come live in a trailer on the parties' property. This man was to work with defendant on defendant's racing car in exchange for room and board. Although the plaintiff testified that this arrangement was made over her objection, her subsequent behavior is inconsistent with her earlier protest. After defendant removed Mark Bonacore from the trailer, he took up residence in the basement of the family home with the plaintiff's permission, he shared the dinner table daily with the parties, and began to socialize with plaintiff, while showing less interest in defendant's racing car. The plaintiff and Mark ran errands together. The plaintiff and Mark spent time with plaintiff's daughter and Mark's daughter. Mark drove the plaintiff to work in Bethel in order to borrow her car. In June, the plaintiff asked the defendant for a divorce. When the defendant stated to the plaintiff that Mark Bonacore's presence was breaking up the marriage and that the defendant wanted Mark out of the house, the plaintiff bargained for two weeks' delay for Mark.
Although the plaintiff attributed the breakdown of the marriage to defendant's behavior, the court concludes that plaintiff's behavior was as responsible for the final breakdown.
The court, having reviewed the evidence in light of the CT Page 2777 statutory criteria, enters the following decree:
1. The court finds the allegations of the plaintiff's count one proven and a judgment dissolving the parties' marriage is entered on the ground of irretrievable breakdown. 2. Count two is dismissed as moot. 3. Count three is dismissed as moot. 4. The defendant's cross complaint is dismissed as moot. 5. The parties' stipulated agreement is adopted by the court as an order verbatim as follows:
Custody of the two minor children is awarded to plaintiff wife, reasonable flexible visitation to defendant husband to include Tuesdays from 4:00 p. m. — 8:00 p. m. and alternating weekends from Friday 4:00 p. m — Sunday 7:00 p. m.; however if daughter does not want to go on Fridays; visitation with her will be on Saturday 9:30 a.m. — Sunday 7:00 p. m. The parties will alternate major holidays and the children's birthdays. Plaintiff mother will have children on Mothers Day and her birthday. Defendant father will have children on Fathers Day and his birthday. Also, defendant-father will have the children for one week during summer while children are in recess from school and father has the week off from his employment. Defendant is not to consume any alcohol prior to or during visitation periods. Defendant will provide 24 hour notice of change in visit schedule and will provide all transportation except for the Saturday a.m. visits with daughter which will be effectuated by plaintiff dropping off daughter and at designated location.
It is further agreed that commencing with Winter 1992 defendant husband will have visitation with the children for one week during their winter vacation from school provided he has the same week off from work.
Defendant husband will pick up children for visit at 421 Park Road, Watertown.
Plaintiff wife will provide 24 hour notice of change in visitation schedule.
6. The defendant shall pay to the plaintiff the sum of $84.50 weekly as child support for each of the two minor children. This order is based on the plaintiff's current net income of $512.56 and the defendant's current net income of $418.35 net. The court applied the guidelines issued by the Commission for Child Support Guidelines effective March 1, 1991.
A wage withholding order is issued pursuant to Section 52-362, Connecticut General Statutes. CT Page 2778
7. Each party shall continue to cover the minor children on all available medical insurance coverages provided by their respective employers. The plaintiff's coverage is designated as primary coverage and the defendant's coverage is designated as secondary. This order incorporates the provisions of Section46b-84 (c) Connecticut General Statutes. The parties shall each pay 50% of any unreimbursed medical expenses incurred for the children.
8. Each party may claim one child as an exemption on their respective income tax returns, with the plaintiff claiming the younger child Shannon Lee and the defendant claiming the older child Ronald Edward. In future years when only one dependant is available as an exemption, the parties shall alternate with the plaintiff having the deduction for such initial year.
9. The defendant's $50,000 life insurance policy provided by the Town of Middlebury shall name the two children as equal beneficiaries until both children are adults or are emancipated.
10. The plaintiff's $60,000 life insurance policy provided by Duracell shall name the two children as equal beneficiaries until both children are adults or are emancipated.
11. The court orders no periodic alimony.
12. Exclusive possession of the real estate known as 421 Park Road, Watertown, Connecticut is awarded to the plaintiff who may continue to reside there until June 30, 1996 or until the sooner occurrence of one of the following events:
 a) neither child is a full time student; b) both children are emancipated or living elsewhere or deceased; c) the plaintiff vacates the residence; d) the plaintiff serves written notice on the defendant that she has elected to sell the premises; e) the plaintiff remarries or cohabits with an unrelated male on the premises.
On June 30, 1996, or upon the earlier occurrence of any one of the listed contingencies, the property shall be sold. If the parties cannot agree on the terms of sale, either party may move the court for an articulation of the terms of sale.
The plaintiff and the defendant shall equally bear the expenses of maintenance of the residence for any one repair or item of maintenance that exceeds $200. The plaintiff shall notify the defendant in writing. The defendant may obtain a second estimate within ten days. If the plaintiff receives no objection CT Page 2779 to her proposed expense or she accepts the defendant's estimate, she shall supervise any work done. All decisions of the plaintiff shall be final. The defendant shall pay his share of any bill within 30 days of its receipt by him.
The plaintiff shall be solely responsible for the first mortgage, second mortgage installments and taxes during her occupancy. The defendant shall pay the homeowners insurance premiums during such time and furnish the plaintiff with proof thereof.
Upon the sale of the premises, the parties shall divide the net proceeds equally, after the plaintiff is paid $2,000 from the defendant's share representing one-half of the loan from the plaintiff's mother and repaid by her from her funds.
13. The plaintiff shall retain the 1985 Chevrolet Blazer and the 1968 Camaro as her sole property.
14. The defendant shall retain the 1980 GMC pick-up truck and the 1971 Harley motorcycle as his sole property.
15. The plaintiff shall retain her 401K account as well as all other of her pension rights as her sole property.
16. The plaintiff shall retain the John Hancock life insurance policy as her sole property.
17. The plaintiff shall retain all of the bank accounts listed on her financial affidavit as her sole property.
18. The defendant shall retain his interest in the 1986 Chevy Cavalier race car together with all spare parts, his tools and his guns and gun accessories, including a 357 hand gun which he shall immediately register in his name.
19. The place shall retain the Wilmington, Vermont real estate as her sole property.
20. Each party shall be solely responsible for the debts listed on their respective financial affidavits except that the defendant shall pay the balance due Lehigh Fuel for oil deliveries made to the residence prior to July, 1990.
21. The parties shall divide the tangible items of personal property as follows, in addition to the items assigned in paragraph 18 to the defendant. The contents of the house are assigned to the plaintiff as her sole property except for: a) any belongings or effects of the defendant's mother; b) a punching bag; CT Page 2780 c) a phase converter; d) the older gas grill; e) a set of weights with exercise bench; f) all automobile manuals; g) all liquor decanters in the shape of autos; h) a table top in the basement; i) any of defendant's mechanic tools still in the house.
Any of the contents of the garage that relate to the defendant's race car or truck repair activities are assigned to the defendant. Not included in the defendant's items are any tools, ladders, or other house related equipment needed to maintain the premises which shall remain on the premises as plaintiff's sole property.
22. The defendant is ordered to pay to the plaintiff the sum of $1,500 as an allowance to prosecute, due on or before May l, 1991.
Counsel for the plaintiff shall draft the judgment file.
HARRIGAN, J.